Hulen Joseph GIRNDT, Appellant,

v.

The STATE of Texas, Appellee.

No. 67927.

Court of Criminal Appeals of Texas,
Panel No. 2.

Sept. 30, 1981.

Rehearing Denied Dec. 9, 1981.

James H. Kreimeyer and Fancy H. Jezek,
Belton, for appellant.

Patrick J. Ridley, County Atty., Belton,
Robert Huttash, State's Atty., Austin, for
the State.

Before ODOM, CLINTON and TEAGUE,
JJ.

## OPINION

TEAGUE, Judge.

Appellant was convicted by a jury of the
misdemeanor offense of driving while in-
toxicated and his punishment was assessed
by the trial judge at 30 days' confinement
and a $400 fine.

To appreciate appellant's claims on ap-
peal, it is first necessary to introduce the
reader to the salient facts of the case.

While on patrol duty on the day in ques-
tion, around 6:30 p. m., two Texas Depart-
ment of Public Safety Officers, Potvin and
Cox, saw a white 1977 Dodge van traveling
in the same direction as they were travel-
ing, going from one side of the road to the

other, once going off and back on the right side of the highway. After observing the van cross the yellow stripe of the highway on three or four different occasions, Potvin activated his vehicle's emergency red lights, which subsequently caused the van's driver to pull the van over to the side of the road where it stopped. After the van stopped, Gloria Steinmeyer was in the driver's seat and appellant was in the passenger's seat. Based upon the fact that the person Potvin saw driving the van was appellant, not Steinmeyer, he immediately formed the opinion they had switched seats in the van. In the opinion of both Potvin and Cox, appellant was extremely intoxicated. These opinions were based on not only the usual characteristics of an intoxicated person walking, talking, having slurred speech, and blood shot eyes, but also upon appellant's abusive behavior toward the officers, including his continuous use of profanity in their presence. Potvin testified that he formally arrested appellant for driving the van while intoxicated after appellant was placed in the patrol car.

Cox, while sitting in the patrol car with Potvin and appellant, confirmed to Potvin that in his opinion appellant was intoxicated. Cox was not able to identify which person was driving the van, as when he first saw appellant, appellant was in the passenger's seat of the van. After the decision was made to arrest appellant, Cox returned to the van where a confrontation between him and Steinmeyer occurred. He then arrested Steinmeyer for public intoxication.

Potvin further testified out of the jury's presence that "[Appellant] stated [to me] that he didn't see why he was being placed in this position, that I was treating him like a—using profanity again—like a criminal. He said, 'I wasn't driving the vehicle anyway. I don't know why you're harassing me'."

THE COURT: What happened then or what was said next?

THE WITNESS: Well, I advised him that he would be placed under arrest for D.W.I.

The trial court sustained appellant's objection to Potvin's proposed testimony that while enroute to the county jail to "book" the appellant, appellant "asked [Potvin] one time why did I think he was so drunk. And I [Potvin] advised him of the driving conditions that he did, about how badly he was weaving and the other factors. And he [appellant] made the statement, 'Well, I didn't think I was weaving that badly'." The record shows the following:

THE COURT: Well, I'm going to sustain the objection as to anything that was said on the way to the Sheriff's office.

Steinmeyer testified for appellant that it was she, not appellant, who was driving the van immediately before it was stopped. She also denied that she and appellant were intoxicated.

Appellant testified and confirmed Ms. Steinmeyer's testimony that it was she, not he, who was driving the van at the time in question. He also denied being intoxicated. Appellant admitted that he lost his temper, and became abusive towards Potvin when Potvin told him that he was under arrest for driving while intoxicated. "Well, yes [I did lose my temper]. Because how could I be charged with D.W.I. if I wasn't driving. I couldn't figure it out."

■ Appellant, on cross examination, again denied that he was the driver of the van. When the prosecutor commenced to ask a question, "Do you recall making a statement to the police officer—," an objection was made and the jury was again retired. After a hearing was conducted, outside the jury's presence, appellant's objection to the question was overruled, and the question was rephrased and answered in the jury's presence.

Q [By the prosecutor]: Isn't it true that you made a statement to the officer, I believe it was Officer Potvin, while inside the patrol vehicle that you didn't think that you were weaving that much on the road?

A: No sir, I didn't make that statement.

After the appellant rested, Potvin was recalled and testified in rebuttal to appel-

lant's assertion that he "didn't make that statement." Potvin stated that when he was driving appellant to the county jail, appellant made the statement, "Well, I didn't think I was weaving that badly," in response to Potvin's explanation of why he had arrested him.

We first observe that the facts were hotly contested between the State and appellant; the State's witnesses not only testifying that appellant was intoxicated, but the lead officer, Potvin, testified that appellant, not Steinmeyer, was the driver of the van. Both appellant and Steinmeyer testified that Steinmeyer, not appellant, was driving the van, and each denied being intoxicated.

We also observe that at trial the prosecutor's basis for the statement's admissibility was, as he related to the trial judge:

> I still am going on the res gestae theory and also if the court does not accept that we've got a prior inconsistent statement that he is not going with today and it's a statement made in front of the police officers in the patrol vehicle.

> \* \* \* \* \* \*

> You [defense counsel] are talking about confessions. This is not a confession. We are talking about prior inconsistent statements toward an element of the offense.

> \* \* \* \* \* \*

Unfortunately for appellant, Sec. 5 of Art. 38.22, V.A.C.C.P., was in full force and effect at the time he made his statement to Potvin. That section provides:

Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

As seen by this section, oral in-custody statements of an accused are now admissible for impeachment purposes.[1] Art. 38.22, *supra*, generally prohibits the admissibility of an oral statement if it stems from custodial interrogation, but an oral in-custody statement is not prohibited from being used at trial if it "has a bearing upon the credibility of the accused as a witness." Thus, such a statement becomes admissible *only if* the accused testifies at his trial. If the accused does not desire an oral custodial statement to be admitted for impeachment purposes, then he may prevent its admissibility by not testifying at his trial. If he does testify and he has made an oral statement that "has a bearing upon his credibility," e. g., one which conflicts with his testimony, then it becomes admissible for impeachment purposes even if made while in custody.

Appellant's counsel on appeal has apparently overlooked Sec. 5, *supra*, as in his brief he relies totally on Sec. 3, which is not applicable to the facts of this cause.[2]

---

1. Appellant neither contended in the trial court nor does he raise the issue on appeal of whether it is necessary that a *Miranda* type legal warning be first given to the accused before an oral in-custody statement may be admissible for impeachment purposes. For this reason, we pretermit a discussion of that issue for another day. Compare, however, *Newberry v. State*, 552 S.W.2d 457 (Tex.Cr.App.1977); Art. I, Sec. 10, Texas Constitution.

2. Sec. 3 provides as follows:

   (a) An oral or sign language statement of an accused made as a result of custodial interrogation is admissible against the ac-

cused in a criminal proceeding for the purpose of impeachment only and when:

   (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

   (2) prior to the statement but during the recording the accused is told that a recording is being made;

   (3) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

   (4) the recording device was capable of making an accurate recording, that the oper-

Sec. 5 appears to be a legislative response to what this Court said in *Butler v. State*, 493 S.W.2d 190 (Tex.Cr.App.1973), and what has been said in cases adhering to *Butler's* holding. See, for example, *Harrison v. State*, 556 S.W.2d 811 (Tex.Cr.App.1977); *Whiddon v. State*, 492 S.W.2d 566 (Tex.Cr. App.1973).

In *Butler*, after discussing the historical background of Art. 38.22, C.C.P., governing the admissibility of oral in-custody statements, the Court concluded that an oral in-custody statement is not admissible unless it is first shown that it complies with an exception to Art. 38.22, *supra*. In holding that an oral in-custody statement, introduced for impeachment purposes, was not admissible, the Court said:

> To permit testimony as an oral confession (not within any statutory exception) for impeachment would undermine the legislative determination expressed in Article 38.22, *supra*. (198).

The Sec. 5 amendment to Art. 38.22, *supra*, which is applicable to all oral statements made after August 28, 1977, makes *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), applicable to Texas Law. Cf. *Butler*, supra. The Legislature thereby made "those changes," see *Butler*, id., in Art. 38.22, which now permit impeachment of a testifying defendant, such as appellant, by use of his oral statements, even though they may be made while in custody.

Therefore, under these facts, it was not error for the trial court to permit the State to impeach the appellant by the use of his prior oral statement; even though the oral

statement was made while he was in lawful custody. Compare also *Franklin v. State*, 606 S.W.2d 818 (Tex.Cr.App.1979); *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr.App.1979).

For the above reasons, appellant's ground of error that "The court erred in allowing the State of Texas to use an oral statement made while appellant was under arrest in violation of Art. 38.22, C.C.P., in an effort to impeach appellant," is overruled. The amendatory changes enacted by the Legislature have effectively repealed *Butler*, supra, and its progeny, and we so hold.

■ Appellant next contends in two grounds of error that reversible error occurred when the trial judge failed to instruct the jury to disregard an answer Potvin gave, after he had first sustained appellant's objection.

The record reflects the following:

A. [Potvin]: From this point we went back to a little interview room where we fill out our reports and we have an interview questionnaire that we—some questions that we ask him stating certain things.

Q. [Prosecutor]: Was he cooperative with you back there?

A. No, sir, he was not.

Q. In what regard?

A. Whenever I told him that I had some questions I needed to ask him concerning his driving and things like this I started to ask him the questions and after—before the second or third question he refused to answer any more. He stated that he wasn't going to answer them.

---

ator was competent, and that the recording is accurate and has not been altered;

(5) the statement is witnessed by at least two persons; and

(6) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during custodial interrogation must be preserved until its destruction is permitted by order of a district court of this state.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found

to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpreter who is qualified and sworn as provided in Article 38.31 of this code.

[Defense Attorney]: Excuse me, your Honor. I'll object to that. He has a right not to answer any questions. And I'll object to him going into it further.

[Prosecutor]: Your Honor, whether he has a right or not it's the testimony of this case that the defendant refused to answer any question.

[Defense Attorney]: Your Honor, I'll object to the prosecutor commenting on is [sic] failure to answer questions. He has a right to remain silent when he is arrested.

THE COURT: I'll sustain the objection.

[Defense Attorney]: Will you instruct the jury to disregard the question and the comment?

THE COURT: Well, I'll overrule the request to instruct the jury.

We find appellant's objection was not timely made. The witness, Potvin, had testified "he [appellant] refused to answer any more [questions]" and "He stated that he wasn't going to answer [the questions]," before appellant urged his proper objection. Nothing is presented for review. If a timely objection had been made, a different question would have been presented. See *Anderson v. State*, 495 S.W.2d 896 (Tex.Cr. App.1973). Cf. *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr.App.1977); *Clinard v. State*, 548 S.W.2d 716 (Tex.Civ.App.1977); *Martinez v. State*, 548 S.W.2d 719 (Tex.Civ.App. 1977); and *Sutton v. State*, 548 S.W.2d 720 (Tex.Civ.App.1977). The ground of error is overruled. In light of the record, we find no error in the action of the trial court in refusing to instruct the jury to disregard Potvin's answers.

The dissent opines, without citation of authority, that "a quite proper objection was made just as soon as Potvin revealed appellant's stated refusal to respond to his inquiries," recognizing all the while that in response to the general question, "Was he cooperative with you back there?", Potvin gave *two* damaging replies before appellant's trial counsel finally uttered an objection that was not specific, see *Breeden v. State*, 438 S.W.2d 105, 108 (Tex.Civ.App. 1969), together with a general statement as to the merits of his objection. A fortiori, the dissent reasons, the trial court should have granted appellant's request that the jury be instructed to disregard the question of the prosecutor and the answers of Potvin. We disagree.

■ As easily seen by the excerpt from the record, supra, though a proper objection was finally voiced by trial counsel, the record does not show that it "was made just as soon as Potvin revealed appellant's stated refusal to respond to his inquiries."[3] The dissent is most charitable with this record, but his generosity leads him to fly in the face of what has been the well established law of this State for many years regarding the making of a timely and proper objection. One of the reasons for the contemporaneous objection rule of law is that trial counsel is not permitted to gamble, by remaining mute during trial, upon the possibility of receiving a favorable or unfavorable answer and then argue on appeal either that his belated objection should have been sustained or, if sustained, an instruction to the jury should have been granted. "One may not gamble with [a witness' answer], and then seek to have undone that which has been done." *State of Texas v. Collins et al.*, 10 F.Supp. 1007, 1009 (S.D.Tex.1935). In short, a delay in presenting a timely and proper objection is fatal to its efficacy. The well established law of this State has long been that after a question is asked and answered by a witness without objection, with no claim that there was any misunderstanding, or without any reason shown for not objecting before the answer was given,

---

**3.** By the excerpt, supra, Potvin answered: "Whenever I told him that *I had some questions I needed to ask him* concerning his driving and things like this *I started to ask him the questions* and after—*before the second or third question he refused to answer any more.* He stated that *he wasn't going to answer them.*"

(Emphasis Added). Thus, contrary to the dissent, Potvin revealed appellant's stated refusal to respond to his inquiries, not when he gave his last answer, after which the objection was made, but when he gave the next to last answer, to which no objection was then voiced.

the refusal of the trial court to withdraw the answer from the jury or instruct the jury not to consider the answer is not error. E. g. *Wilson v. State*, 87 Tex.Cr.R. 538, 223 S.W. 217 (1920); *Renfro v. State*, 156 Tex. Cr.R. 400, 242 S.W.2d 772 (1951). Furthermore, McCormick on Evidence, Sec. 52 (1972 Ed.), teaches us: "Usually, in the taking of testimony of a witness an objection is apparent as soon as the question is asked, since the question is likely to indicate that it calls for inadmissible evidence. Then counsel must, if opportunity affords, state his objection before the witness answers." Here, the witness, Potvin, not the questioner, although possibly in tandem, telegraphed to appellant's trial counsel in language loud and clear what was coming, "... we have an interview questionnaire that we—some questions that we ask him stating certain things; .... Whenever I told him that I had some questions I needed to ask him ..." Appellant did not at trial, nor does he now, claim there was any misunderstanding of the question asked, nor of the answers given, nor did he then, nor now, give a reason for making his belated objection. This record is a far cry from one showing a "forward witness," i. e., one who may answer a question before trial counsel has a chance to object. It was incumbent upon appellant's experienced trial counsel[4] to voice a timely objection. He failed to do so, but actually received more relief from the trial court than what he was entitled to receive. He now seeks additional relief from this Court on an improperly perfected ground of error. We must, for the reasons stated, decline his request, and overrule his ground of error. See also *Taylor v. State*, 489 S.W.2d 890 (Tex.Civ.App.1973).

■ Appellant next complains of certain jury argument of the prosecutor, to-wit:

\* \* \* \* \* \*

Now, I don't believe that's the way you are going to come back with a verdict in this case.

I believe that the evidence is there. I believe that you people are fair and impartial jurors based on the evidence you are going to come back and tell these officers you did right, you arrested a DWI, you got him off the road, you're doing your job, thank you, gentlemen.

Are you going to say, Mr. Girndt, you are guilty again of D.W.I., don't let it happen again?

[Defense Attorney]: Your Honor, now I object to that argument. He is telling the jury to find him guilty because he is [sic] previously been convicted, and that's not what the court's charge is and we'll object to it.

THE COURT: Well, I'll sustain the objection.

[Defense Attorney]: Will you instruct the jury to disregard it?

THE COURT: I instruct the jury to disregard the last statement of counsel.

[Defense Attorney]: I move for a mistrial, your Honor.

THE COURT: Overruled.

\* \* \* \* \* \*

The evidence shows that when cross examined, appellant admitted he had been previously convicted of the felony offense of driving while intoxicated. The jury was given a limiting instruction on this evidence. We find the trial court's instruction to the jury was sufficient to cure any error that may have resulted from this unintelligible argument of the prosecutor.

Because the judgment reflects appellant entered a plea of guilty, when in fact he pled not guilty, and because we have found no reversible error, we reform the judgment to show this fact.

The judgment of conviction, as reformed, is affirmed.

ODOM, J., concurs.

---

4. By the last edition of the *Texas Legal Directory*, trial counsel is listed as being board certified in criminal law. We also observe that in *Sutton*, supra, which is from the same county as this cause, trial counsel there filed a pre-trial motion in limine to prevent the State from inquiring about his client's refusal to take a breath test. The only pre-trial motion we find in the record on appeal is a motion in limine filed by the prosecutor, which concerns the suspension of appellant's driver's license, if conviction occurred.

CLINTON, Judge, dissenting.

Though I am troubled by the looseness of some of the language used by the majority in overruling the first ground of error, the result seems correct since, as I understand the situation, his remark offered to impeach appellant's denial that he had made it came during a somewhat argumentative exchange with Trooper Potvin in the patrol unit enroute to the Bell County jail. Thus, while appellant was surely in custody, he was not being subjected to interrogation; his impeaching remark seems purely gratuitous, garrulously uttered; accordingly, it was admissible for that purpose. *Sanchez v. State,* 589 S.W.2d 422, 423 (Tex.Cr.App. 1979) and cases cited therein are ample authority, and all the discussion about *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App. 1973), the amendments to Article 38.22, V.A.C.C.P. making *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) "applicable to Texas law," and the like is superfluous.

My disagreement with the majority lies in its disposition of the two grounds of error complaining of failure of the trial court to instruct the jury to disregard the answer of Potvin which informed the jury that at the station house appellant invoked his right to remain silent when questioned by the Trooper. The majority labels "untimely" the objection that was made and, therefore, dismisses the matter as not presenting anything for review. But as I read the part of the record excerpted by the majority, a quite proper objection was made just as soon as Potvin revealed appellant's stated refusal to respond to his inquiries. Certainly the trial court had no problem of timeliness since the judge sustained the objection. And, it must be emphasized, the complaint is in failing to instruct the jury to disregard—a request the timeliness of which cannot be faulted.

Therefore, I would review the grounds of error in light of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and similar decisions by the Supreme Court of the United States treating with impermissible use of silence on the part of an accused by the prosecuting attorney, e. g., *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). Because the majority does not, I respectfully dissent.